**STIRLING COOKE BROWN INSURANCE BROKERS LIMITED**                    Lloyd's Brokers

*In Account with*   STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED

CONTRACT No.   AH0054694

## EXCESS OF LOSS REINSURANCE AGREEMENT

made between

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY
AS UNDERWRITTEN FOR BY
JAMES E. HACKETT REINSURANCE CORPORATION**

Hereinafter referred to as the "REINSURED"

and

**CERTAIN INSURANCE AND/OR REINSURANCE COMPANIES
WHO HAVE SUBSCRIBED TO THIS REINSURANCE,
EACH TO THE EXTENT OF THE PROPORTION UNDERWRITTEN
AND NOT ONE FOR THE OTHER, AS SET OUT IN THE
SIGNING SCHEDULES ATTACHED HERETO.**

Hereinafter referred to as the "REINSURERS"

WHEREBY IT IS AGREED BETWEEN THE PARTIES AS FOLLOWS:

### ARTICLE 1 INTEREST CLAUSE

This Reinsurance shall indemnify the Reinsured in respect of all business written by the Reinsured and classified as Occupational Accidental Death and Bodily Injury, as determined by the regulatory authority, Permanent Total Disablement, Permanent Partial Disablement, Temporary Total Disablement, Temporary Partial Disablement, including Medical Expenses as incurred under policies issued by the Reinsured and classified by them under reference No. G13194.

There shall be no coverage hereunder in respect of:-
Risks with known Occupational Disease exposures per NCCI codes, Jones Act, Employer's Liability and Radioactive Contamination, whether directly or indirectly.

### ARTICLE 2 PERIOD CLAUSE

This Reinsurance shall indemnify the Reinsured for all losses occurring in respect of risks attaching during the period of 12 months commencing 1st November 1994.

The territorial scope of this Reinsurance shall be worldwide, in respect of risks principally domiciled in the States of Alabama, Georgia and Louisiana.

Page 1 of 10



**STIRLING COOKE BROWN INSURANCE BROKERS LIMITED**                    Lloyd's Brokers

*In Account with*   STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED

CONTRACT No.   AH0054694

### ARTICLE 3 REINSURING CLAUSE

This Reinsurance is to to pay up to an amount equal to US$ 2,000,000 in the aggregate and in all in respect of the business covered hereunder in excess of an amount equal to US$ 5,063,318 in the aggregate or 75% of the applicable Net Premium income, whichever the greater.

It is agreed that in computing the excess point and indemnity hereunder, only losses of up to US$ 25,000 each and every loss or series of losses arising out of any one event may be taken into account.

### ARTICLE 4 ULTIMATE NET LOSS CLAUSE

The term "Ultimate Net Loss" shall mean the sum actually paid by the Reinsured in settlement of losses or liability after making deductions for all recoveries, all salvages and all claims upon other Reinsurances whether collected or not and shall include all adjustment expenses arising from the settlement of claims other than the salaries of employees and the office expenses of the Reinsured.

All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Reinsurance shall be regarded as if recovered or received prior to the said settlement and all necessary adjustments shall be undertaken by the parties hereto.

Nothing, however, in this Clause shall be construed to mean that losses are not recoverable from Reinsurers until the Ultimate Net Loss to the Reinsured has been determined.

Notwithstanding anything contained herein to the contrary, it is understood and agreed that recoveries under all underlying Excess of Loss Reinsurances (as far as applicable) are for the sole benefit of the Reinsured and shall not be taken into account in computing the Ultimate Net Loss or Losses in excess of which this Reinsurance attaches, nor in any way prejudice the Reinsured's right of recovery hereunder.

### ARTICLE 5 NET RETAINED LINES CLAUSE

This Reinsurance applies only to that part of the original policies which the Reinsured retain net for their own account, and in computing the Ultimate Net Loss, only loss or losses in respect of such net retained part of the original policies shall be included.

The amount of Reinsurers' liability in respect of any loss or losses shall not be increased by reason of the inability of the Reinsured to collect from any other Reinsurers whether specific or general, any amounts which may have become due from them whether such inability arises from the insolvency of such other Reinsurers or due to the cancellation of any reinsurance by the Reinsured or by such other Reinsurers for whatever reason, or for any other reason whatsoever.



**STIRLING COOKE BROWN INSURANCE BROKERS LIMITED**   Lloyd's Brokers

*In Account with*  **STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED**

CONTRACT No.    AH0054694

## ARTICLE 6 CURRENCY CONVERSION CLAUSE

All transactions hereunder shall be conducted in United States Dollars and for the purpose of this Reinsurance all claims paid by the Reinsured in currencies other than United States Dollars shall be converted into United States Dollars at the rate of exchange at which such items are entered in the Reinsured's books.

## ARTICLE 7 INTERLOCKING CLAUSE

In the event of the Reinsured being involved in a loss under two or more original policies which incept in different Underwriting Years of Account, then it is understood and agreed that the amount of the retention to be retained by the Reinsured in respect of such loss shall be reduced to that percentage of the retention which the Reinsured's settled losses on the policies incepting during the Underwriting Year of Account of this Reinsurance bears to the total of the Reinsured's settled losses arising out of all policies contributing to the loss. The limit of indemity and/or recovery hereunder shall be arrrived at in the same manner.

## ARTICLE 8 PREMIUM CLAUSE

The Reinsured shall pay to Reinsurers a Minimum and Deposit Premium of US$136,709 payable in quarterly in arrears.

As soon as reasonably practicable after the expiry hereof, the Reinsured shall render a statement of their applicable Net Premium Income accruing in respect of risks attaching during the period hereon.
The total premium due to Reinsurers shall be adjusted to an amount equal to a rate of 2.25% thereof, any balance in excess of the Deposit Premium shall thereupon become due for payment. The first adjustment shall take place at 31st October 1995, the second at 31st October 1996 and the final adjustment at 31st October 1997

For the purposes of the foregoing, the Reinsured's Net Premium Income accounted for in currencies other than United States Dollars shall be converted into United States Dollars at the rates of exchange employed in the books of the Reinsured.

The term "Net Premium Income" shall be understood to mean gross premiums less cancellations and return premiums, all commissions, deductions and allowances under the original business, and premiums given off by way of Reinsurance(s), recoveries under which inure to the benefit of Reinsurers hereon.

Page 3 of 10



**STIRLING COOKE BROWN INSURANCE BROKERS LIMITED**　　Lloyd's Brokers

*In Account with*　STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED

CONTRACT No.　　AH0054694

## ARTICLE 9 COMMUTATION CLAUSE

Within 60 months after each anniversary date of this Reinsurance, the Reinsured shall submit a statement to the Reinsurers for their consideration listing amounts paid, and reserves, in respect of all losses involving periodic payments of expenses and/or indemnity. This statement shall form the basis of a final agreed value for all such losses. The reserves shall be determined by employing one of the following alternatives:-

A　　A calculation based on the following criteria:-

1. In respect of all "index linked" benefits, annuity values shall be calculated based upon an annual discount of 0%, and an annual escalation of 0%.

2. In respect of all un-indexed benefits anuity values shall be calculated based upon an annual discount of 7%.

3. In respect of all future medical costs an annuity calculation shall be based upon the Reinsured's evaluation of long term medical care and rehabilitation requirements, using an annual discount of 0%.

4. Where applicable, impaired life expectancy, survivor's life expectancy, as well as remarriage probability shall be reflected in the calculation by employing tables recommended by a mutually acceptable actuarial consultant.

B.　　Any other method of calculating the agreed value of one or more losses, as mutually agreed between the Reinsured and the Reinsurers.

Except as may be mutually agreed, this statement duly signed by the Reinsured shall then be deemed to be the full and final statement of all known losses involving periodic payments of expenses and/or indemnity and the Reinsurers shall promptly pay to the Reinsured any amounts that may be shown to be due. Notwithstanding the above, such statement (whether involving payment of claims under this Reinsurance or not), shall constitute a complete release of liability of the Reinsurers in respect of the applicable annual period in respect of all losses involving periodic payment of expenses and/or indemnity.

## ARTICLE 10 SUNSET CLAUSE

The Reinsured shall notify the Reinsurers with full particulars within five years from the Anniversary Date of this Reinsurance of all events giving rise or likely to give rise to a claim hereunder.

No liability shall attach hereunder for any event not notified within this period.

**STIRLING COOKE BROWN INSURANCE BROKERS LIMITED**  Lloyd's Brokers

*In Account with* STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED

CONTRACT No.   AH0054694

### ARTICLE 11 LOSS SETTLEMENTS CLAUSE

In the event of loss which may cause claim or claims under this Reinsurance, the Reinsured shall give immediate notice to the Reinsurers through Stirling Cooke Brown Reinsurance Brokers Limited, but inadvertent error or omission of such notification shall not prejudice this Reinsurance, subject always to the terms of Article 10.

All loss settlements made by the Reinsured shall be binding upon the Reinsurers, provided that such settlements are within the terms and conditions of the Original Policies and within the terms and conditions of this Reinsurance, and the Reinsurers shall pay the amounts due from them upon exhibition of such evidence as may reasonably be required.

### ARTICLE 12 SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Reinsurers hereon to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the request of the Reinsured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of Reinsurers' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon Messrs. Mendes and Mount, New York, New York and that in any suit instituted against any one of them upon this Reinsurance, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorised and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Reinsured to give a written undertaking to the Reinsured that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding institute by or on behalf of the Reinsured or any beneficiary hereunder arising out of this contract of Reinsurance, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.



**STIRLING COOKE BROWN INSURANCE BROKERS LIMITED**  Lloyd's Brokers

*In Account with* **STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED**

CONTRACT No.  AH0054694

### ARTICLE 13 WAR AND CIVIL WAR EXCLUSION CLAUSE

Notwithstanding anything contained herein this Reinsurance does not cover loss or damage directly or indirectly occasioned by, happening through, or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

### ARTICLE 14 ERRORS AND OMISSIONS CLAUSE

Any inadvertent error or omission on the part of either the Reinsured or the Reinsurers shall not relieve the other party from any liability which would have attached hereunder, provided that such error or omission is rectified immediately upon discovery, and shall not impose any greater liability on the Reinsurers than would have attached hereunder if the error or omission had not occurred.

Under no circumstances shall any part of this clause override the loss reporting conditions set out in Article 10.

### ARTICLE 15 INSOLVENCY CLAUSE

In the event of the insolvency of the Reinsured, this Reinsurance shall be payable directly to the Reinsured, or its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Reinsured without diminution because of the insolvency of the Reinsured or because the liquidator, receiver, conservator or statutory successor of the Reinsured has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Reinsured shall give written notice to the Reinsurers of the pendency of a claim against the Reinsured indicating the policy or bond reinsured, which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences that they may deem available to the Reinsured or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurers shall be chargeable, subject to the approval of the court, against the Reinsured as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Reinsured solely as a result of the defence undertaken by the Reinsurers.

Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defence to such claim, the expense shall be apportioned in accordance with the terms of the Reinsurance as though such expense has been incurred by the Reinsured.



**STIRLING COOKE BROWN INSURANCE BROKERS LIMITED**                    Lloyd's Brokers

*In Account with*   STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED

CONTRACT No.   AH0054694

As to all reinsurance made, ceded, renewed or otherwise becoming effective under this Reinsurance, the Reinsurance shall be payable as set forth above by the Reinsurers to the Reinsured or to its liquidator, receiver, conservator or statutory successor, except as provided by Sections 4118 (a) (1) (A) and 1114 (c) of the New York Insurance Law or except (1) where the Reinsurance specifically provides another payee in the event of the insolvency of the Reinsured, and (2) where the Reinsurers, with the consent of the direct insured or insureds, have assumed such policy obligations of the Reinsurance as direct obligations of the Reinsurers to the payees under such policies and in substitution for the obligations of the Reinsured to such payees. Then, and in that event only, the Reinsured, with the prior approval of the certificate of assumption on New York risks by the Superintendent of Insurance of the State of New York, is entirely released from its obligation and the Reinsurers pay any loss directly to payees under such policy.

### ARTICLE 16 INSOLVENCY FUND EXCLUSION CLAUSE

It is agreed that this Reinsurance excludes all liability of the Reinsured arising by contract, operation of law, or otherwise, from its participation or membership, whether voluntary or involuntary, in any insolvency fund. "Insolvency Fund" includes any guaranty fund, insolvency fund, plan, pool, association, fund or other arrangement, however denominated, established or governed, which provides for any assessment of or payment or assumption by the Reinsured of part or all of any claim, debt, charge, fee or other obligation of an insurer, or its successors or assigns, which has been declared by any competent authority to be insolvent, or which is otherwise deemed unable to meet any claim, debt, charge, fee or other obligation in whole or in part.

### ARTICLE 17 REINSURANCE TAX CLAUSE

Notice is hereby given that the Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Reinsurers will deduct 1% from the amount of the return and the Reinsured or its agent should take steps to recover the Tax from the United States Government.

### ARTICLE 18 AMENDMENTS AND ALTERATIONS CLAUSE

It is hereby understood and agreed that any amendments and/or alterations to this Reinsurance that are agreed, either by correspondence and/or Broker's Slip endorsements, shall be automatically binding hereon and unless otherwise agreed by the parties hereto shall be formally documented by an exchange of correspondence signed by the parties or by the issue of a Contract Addendum which shall be considered to form an integral part hereof.



**STIRLING COOKE BROWN INSURANCE BROKERS LIMITED**     Lloyd's Brokers

*In Account with* **STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED**

CONTRACT No.    AH0054694

## ARTICLE 19 INSPECTION OF RECORDS CLAUSE

The Reinsurers and/or their nominees shall at all reasonable times and upon reasonable notice being given, be entitled to inspect all books, relevant records, correspondence, documents and vouchers in possession of or accessible to the Reinsured and in any way connected with the adjustment or a loss applying to this Reinsurance, it being understood that the Reinsured cannot be called upon to supply documentary evidence other than that which they themselves have received.

## ARTICLE 20 INTERMEDIARIES CLAUSE

Stirling Cooke Brown Reinsurance Brokers Limited in account with Stirling Cooke Brown Insurance Brokers Limited, of 65, Leadenhall Street, London EC3A 2AD, England, are recognised as the Broker for this Reinsurance, through whom all communications and payments relating thereto shall be transmitted to both parties.

## ARTICLE 21 LAW AND JURISDICTION CLAUSE

This Reinsurance shall be governed by and construed in accordance with the laws of the state of Massachusetts, U.S.A. under the jurisdiction of the courts of the state of Massachusetts, U.S.A.

## ARTICLE 22 ARBITRATION CLAUSE

Disputes between the parties arising out of this Reinsurance which cannot be resolved by compromise, including but not limited to any controversy as to the validity of this Reinsurance, whether such disputes arise before or after termination of this Reinsurance shall be submitted to arbitration.

The board of arbitration shall consist of three Arbitrators. The Arbitrators shall be active or retired disinterested officials of insurance or reinsurance companies or Underwriters at Lloyd's, London not under the control of either party to this Reinsurance.

One Arbitrator shall be appointed by the Reinsurers, and one shall be chosen by the Reinsured. The third Arbitrator shall be chosen by the other two Arbitrators within 20 days after the two Arbitrators have been appointed. If the two Arbitrators cannot agree upon a third Arbitrator, each Arbitrator shall nominate three persons, two of whom shall be rejected by the other Arbitrator. The third Arbitrator shall then be chosen by drawing lots.

If either party fails to choose an Arbitrator within 30 days after receiving the written request of the other party, the latter shall choose both Arbitrators, who shall then choose the third Arbitrator.

The party requesting the arbitration (the "Petitioner") shall submit its brief to the Arbitrators within 30 days after notice of the selection of the third Arbitrator. Upon receipt of the Petitioner's brief, the other party (the "Respondent") shall have 30 days to file a reply brief. On receipt of the Respondent's brief, the Petitioner shall have 20 days from the receipt of the Respondent's reply brief to file its rebuttal brief. The Arbitrators may extend the time for filing of briefs at the request of either party.

STIRLING COOKE BROWN INSURANCE BROKERS LIMITED                    Lloyd's Brokers

*In Account with*    STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED

CONTRACT No.    AH0054694

The majority decision of the arbitration panel shall be in writing and shall be final and binding upon the parties.

The Arbitrators shall make their award with a view to effecting the intent of this Reinsurance.

Each party shall bear the expense of its own Arbitrator, and shall jointly and equally bear with the other the expense of the third Arbitrator and of the arbitration. In the event that the two Arbitrators are chosen by one party, as above provided, the expense of the two Arbitrators, the third Arbitrator and the arbitration shall be equally divided between the two parties.

Any arbitration proceedings shall take place at a location mutually agreed upon by the parties to this Reinsurance, but notwithstanding the location of the arbitration, all proceedings pursuant hereto shall be governed by the law of the State of Massachusetts, USA.

## ARTICLE 23 SEVERAL LIABILITY NOTICE LSW 1001 (REINSURANCE)

The subscribing Reinsurers' obligations under contracts of Reinsurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing Reinsurers are not responsible for the subscription of any co-subscribing Reinsurer who for any reason does not satisfy all or part of its obligations.



**STIRLING COOKE BROWN INSURANCE BROKERS LIMITED**  Lloyd's Brokers

*In Account with*   STIRLING COOKE BROWN REINSURANCE BROKERS LIMITED

CONTRACT No.   AH0054694

## SIGNING SCHEDULE

MADE IN DUPLICATE AND SIGNED AND EXCHANGED BETWEEN THE PARTIES

For and on behalf of the REINSURED this 3RD day of MARCH...... 1997

*[signature]*

FOR AND ON BEHALF OF
THE JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY
BOSTON, MASSACHUSETTS

For and on behalf of REINSURERS
(as per the Signing Schedules attached hereto)

0489w

Page 10 of 10

**STIRLING COOKE BROWN INSURANCE BROKERS LTD**   Lloyd's Brokers

*In Account with*   STIRLING COOKE BROWN REINSURANCE BROKERS LTD

---

SIGNING SCHEDULE
----------------

Attaching to and forming part of CONTRACT No: AH0054694

In the Name of: JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY AS UNDERWRITTEN FOR BY JAMES E. HACKETT REINSURANCE CORPORATION.

For the Period: LOSSES OCCURRING IN RESPECT OF RISKS ATTACHING DURING 12 MONTHS AT 1ST NOVEMBER, 1994.

Participation : 50.0000 %

| | | |
|---|---|---|
| 50.0000 % | D0907 | Federal Insurance Company. per Duncanson and Holt Europe Limited. 0507120194 |

Lines hereon are percentages of 100% of limits
and premium as per attached contract

NOW KNOW YE that We, the Reinsurers each of us to the extent of the amount/percentage underwritten by us respectively, do hereby assume the burden of the Reinsurance, and promise and bind ourselves, each for itself only and not one for the other and in respect only of the due proportion of each of us, to the Reinsured, their Executors, Administrators and Assigns, for the true performance and fulfilment of this Contract.

IN WITNESS WHEREOF the Director of Policy Signing Services of LONDON INSURANCE AND REINSURANCE MARKET ASSOCIATION ("LIRMA") has subscribed his name on behalf of each of the LIRMA Companies and (where the Companies Collective Signing Agreement ("CCSA") is being implemented) on behalf of the Leading CCSA Company which is a LIRMA Member and authorised to sign this Contract (either itself or by delegation to LIRMA) on behalf of all the other CCSA Companies.

Signed: *Marie-Louise Rossi*
    *Director of Policy Signing Services*

LIRMA 1    | 9 | S | 0 | 4 | 0 | 4 | 0 | 0 | S | 0 | S | 2 | 0 |

**STIRLING COOKE BROWN INSURANCE BROKERS LTD**   Lloyd's Brokers

*In Account with*   STIRLING COOKE BROWN REINSURANCE BROKERS LTD

---

SIGNING SCHEDULE
------------------

Attaching to and forming part of CONTRACT No: AH0054694

In the Name of: JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY AS UNDERWRITTEN FOR BY JAMES E. HACKETT REINSURANCE CORPORATION.

For the Period: LOSSES OCCURRING IN RESPECT OF RISKS ATTACHING DURING 12 MONTHS AT 1ST NOVEMBER, 1994.

Reinsurer      : Clarendon America Insurance Company
                 Per Raydon Underwriting Management Co.

Comprising :-

100.0000 %   Clarendon America Insurance Company

per Stirling Cooke Ins Brokers (Bermuda) Ltd

Reference      : PCR0399/94

Participation : 50.0000 %



Lines hereon are percentages of 100% of limits
and premium as per attached contract